UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
KISS NAIL PRODUCTS, INC.,

                        Plaintiff,

                                                    **REPORT AND**
                                                    **RECOMMENDATION**
         -against-                                      CV-18-5625 (PKC) (AYS)

SHENZHEN JINRI ELECTRICAL
APPLIANCE CO. LTD. d/b/a VAV
and VIVID & VOGUE; and JOHN
DOE 1 d/b/a ROPALIA,

                        Defendants.

---------------------------------------------------------X
**ANNE Y. SHIELDS, United States Magistrate Judge:**

       Plaintiff Kiss Nail Products, Inc. ("Kiss" or "Plaintiff") commenced this action for patent infringement against Defendant Shenzhen Jinri Electrical Appliance Co. Ltd. d/b/a Vav and Vivid and Vogue ("Jinri" or Defendant") and John Doe 1 d/b/a Ropalia ("Ropalia") pursuant to 35 U.S.C. § 271.

       The case was commenced in October of 2018. See Compl., Docket Entry ("DE") [1]. Defendant failed to answer and Kiss thereafter requested entry of a certificate of default. The Clerk of the Court has issued that certificate, and Plaintiff has moved for entry of judgment thereon.[1] Presently before this Court is the District Court's referral of the Plaintiff's motion for issuance of a Report and Recommendation as to whether Plaintiff has established Defendant's

---

1. The Court notes that Plaintiff moves for entry of default judgment solely against Defendant Jinri. See DE [19]. Therefore, before this case can be closed and judgment entered, Plaintiff must dismiss Defendant John Doe 1 d/b/a Ropalia from this action.

1

liability such that the motion should be granted, and if so, to determine whether a permanent injunction should be granted against the Defendant.[2] See Order Referring Motion dated October 9, 2019. For the reasons set forth below, this Court recommends entry of judgment on behalf of Kiss, and that a permanent injunction issue barring Jinri from infringing on Kiss' protected patent.

BACKGROUND

I.  Facts

The following facts adduced from Plaintiff's Complaint, and declaration of David Cjo ("Cho Decl."), and declaration of Thomas R. McLean ("McLean Decl."), and declaration of Eric A. Prager ("Prager Decl."), and the exhibits attached thereto, are undisputed and taken as true for purposes of deciding this motion. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992) (citations omitted).

Plaintiff Kiss is a New York company doing business in Port Washington, New York. See Compl. ¶ 2. Kiss is a supplier in the beauty care business, including creating and supplying products for hair care to customers throughout the world. Id. ¶ 11. Among its line of products, Kiss sells its Instawave Automatic Hair Curler product (the "Instawave"). Id. ¶ 12. The Instawave features a rotating member for wrapping hair around a heated barrel in order to assist in forming curls in a user's hair. Id. ¶ 12.

On July 3, 2018, United States Patent No. 10,010148 (the "'148 Patent") was issued to Kiss as the owner of all rights, title and interest in the '148 Patent. Compl. ¶¶ 13-14. The '148 Patent describes and claims novel Hair Styling Apparatuses and Related Methods developed by

---

2. Subsequent to the District Court's referral to the Honorable Gary R. Brown, this case was transferred to the undersigned. See Docket Entry dated 1/21/2020.

2

Kiss. Id. ¶ 15. The '148 Patent is valid, subsisting in full force and effect. Id. ¶ 14.

Defendant Jinri is a limited liability corporation organized and existing under the laws of the People's Republic of China. Compl. ¶ 3. Jinri is believed to have offices in at Jinri Electrical Industrial Park, Patoi Road, 1st Industrial Zone, Lisonglang Community, Gongming Town, Guangming New District, Shenzhen, Peoples Republic of China. Id. ¶ 3. Jinri manufactures, sells and imports into the United States hair curler products, in particular the VAV Automatic Hair Curler ("VAV Curler") that Plaintiff alleges infringes the '148 Patent. Id. ¶¶ 4, 17-19.

On July 6, 2018, Kiss sent a letter to Jinri via courier advising of the issuance of the '148 Patent, explaining its belief that the VAV Curler infringes at least one claim of the '148 Patent, and demanding that Jinri discontinue its importation, sales and offers to sell products that infringe the '148 Patent in the United States. Compl. ¶ 20. The letter was sent again to Jinri by email on July 19, 2018. Id. ¶ 20. On or about July 19, 2018, Jinri acknowledged receipt of the Kiss correspondence, but declined to discontinue its infringing activities. Id. ¶ 21.

Ropalia sells beauty products direct to customers, including a Jinri branded Automatic Hair Curler. Compl. ¶ 22. Other than branding on the product, the Ropalia Curler is substantially identical to the VAV curler. Id. ¶ 23. Plaintiff alleges that the Ropalia Curler is made by Jinri or under its authorization. Id. ¶ 23. On or about August 6, 2018, Kiss submitted a notice of IP Rights violation regarding infringement of the '148 Patent by the Ropalia Store via Amazon.com. Id. ¶ 25. On August 9, 2018, Amazon.com confirmed receipt of the notice and forwarded same to the contact information provided by Ropalia. Id. ¶ 26.

Kiss has not assigned or licensed any rights to the '148 Patent to either Jinri or Ropalia. Compl. ¶¶ 19, 24-25.

II.	Service

Since 2018 Plaintiff has been attempting to serve process on Jinri pursuant to the Hague Convention. McLean Decl. ¶¶ 2, 5, DE [19-7]. On December 20, 2018, Plaintiff's international service provider transmitted via international courier (FedEx) the summons and complaint addressed to the Chinese Central Authority, which was delivered on December 24, 2018. McLean Decl. ¶ 5. Since transmission of the documents, no certificate or response of any kind has been received from the Chinese Central Authority. McLean Decl. ¶¶ 9-13.

III.	Procedural History

The instant action was commenced on October 9, 2018. See Compl. On October 24, 2018, the Clerk of the Court issued a summons directed to Defendant Jinri. DE [7]. On April 15, 2019, The Honorable Gary R. Brown directed Plaintiff to report on the status of the case by April 30, 2019. See Status Report Order Dated April 15, 2019. On April 26, 2019, Plaintiff submitted a letter advising the Court that it was attempting to serve the Defendants via the Hague Convention, and if they did not receive proof of service by the Central Authority of China by June 24, 2019, they would move the Court for a default judgment. See DE [11].

On June 27, 2019, Kiss submitted a pre-motion letter to the Court seeking leave to move for default judgment. See DE [12]. The District Court conducted a hearing on July 17, 2019. At that hearing the District Court requested that Plaintiff submit, by August 1, 2019, a letter identifying: (1) cases, if any, where the court considered whether notice was given to the international defendant in deciding whether to permit the plaintiff to move for a default judgment, prior the defendant being served by its country's Central Authority, and (2) cases, if any, in which a court rejected the request to move for a default judgment under circumstances similar to this case. See Minute Entry dated July 17, 2009.

4

On August 1, 2019, Plaintiff submitted a letter citing the research it had found regarding the Court's two questions. See DE [14]. While citing to numerous cases, the research was factually distinguishable from the facts set forth here. Id. After reviewing Plaintiff's research, the District Court issued an Order dated August 14, 2019, directing Kiss to send via courier to Jinri a copy of the summons and complaint, as well as the correspondence with the Court concerning the default judgment, by August 23, 2019. See Order dated August 14, 2019. On September 10, 2019. On August 20, 2019, Kiss sent the papers by FedEx to Jinri, and received notice from FedEx that the papers were successfully delivered on August 23, 2019. Prager Decl. ¶¶ 6-8, DE [19-8].

On September 10, 2019, Kiss received a delivery via FedEx from an unidentified sender returning the papers it delivered to Jinri. Prager Decl. ¶ 9. The package contained a note stating, "there is no this people and an error address." Id. The next day, on September 11, 2019, Kiss emailed the contents of the FedEx package to email addresses known to be associated with Jinri. Id. ¶ 11. To date, Kiss has not received a response. Id. ¶ 12.

Jinri has never responded or moved in response to the complaint. Accordingly, Plaintiff requested entry of a certificate of default. See DE [17]. The Clerk of the Court noted Jinri's default on September 18, 2019. See DE [18]. Kiss thereafter moved for entry of a judgment of default, DE [19], which motion was referred to this Court for Report and Recommendation. See Order Referring Motion dated October 9, 2019.

## DISCUSSION

I.     Service

Service of a summons and complaint in a federal lawsuit is governed by Rule 4 of the Federal Rules of Civil Procedure. To the extent relevant here, Rule 4(j)(1) provides that a foreign

5

state, such as China, "must" be served in accordance with Title 28, United States Code, Section 1608. Section 1608, in turn, authorizes four ways to serve a foreign state. In pertinent part, it provides that service "shall be made upon a foreign state" (1) by "special arrangement"; (2) "in accordance with an applicable international convention," such as the Hague Convention; (3) if service cannot be made in either of these ways, by mail "to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned"; or (4) if service cannot thus be made within thirty days, by sending copies to the American Secretary of State to send to the foreign nation by diplomatic channels. 28 U.S.C. § 1608.

Under Rule 4(h), a foreign corporation must be served "in a judicial district of the United States ... or at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery." Rule 4(f)(1), in turn, permits service outside the United States "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention." Subject to enumerated restrictions, Rule 4(f)(2) permits alternative service "if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice." Finally, Rule 4(f)(3) provides that service on a foreign litigant can be effected "by other means not prohibited by international agreement, as the court orders." As a general matter, "'[t]he only limitations on Rule 4(f)(3) are that the means of service must be directed by the court and must not be prohibited by international agreement.'" Advanced Aerofoil Techs., AG v. Todaro, No. 11 Civ. 9505(ALC)(DCF), 2012 WL 299959, at *1 (S.D.N.Y. Jan. 31, 2012) (quoting Ehrenfeld v. Salim a Bin Mahfouz, No. 04 Civ. 9641(RCC), 2005 WL 696769, at *2 (S.D.N.Y. Mar. 23, 2005)).

As both the United States and China are signatories to the Hague Convention, that pact

6

governs service of process by transmittal of documents abroad in this case. See, e.g., Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 699, 705, 108 S. Ct. 2104, 100 L. Ed. 2d 722 (1988) (dictum) ("Compliance with the Convention is mandatory in all cases to which it applies...."); Hague Convention art. 1 ("The present Convention shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad."); Fed. R. Civ. P. 4 advisory committee's note ("Use of the Convention procedures, when available, is mandatory if documents must be transmitted abroad to effect service."). The Hague Convention requires signatory countries to establish a Central Authority to receive requests for service of documents from other countries and to serve those documents. See Hague Convention arts. 2–6. In addition, Article 10 allows for service by other means, such as service "by postal channels" or through judicial officers, "[p]rovided the State of destination does not object." Id. art. 10; see Burda Media, Inc., 417 F.3d at 300 (listing "several alternate methods of service" under the Hague Convention).

Several other provisions of the Convention are relevant here. First and foremost, under Article 13 of the Convention, a country "may refuse to comply" with a request for service "if it deems that compliance would infringe its sovereignty or security." Hague Convention art. 13. Second, Article 14 provides that "[d]ifficulties which may arise in connection with the transmission of judicial documents for service shall be settled through diplomatic channels." Id. art. 14. Finally, to the extent relevant here, Article 15 sets forth certain conditions that must be met before a default judgment can be entered against a defendant served pursuant to the Convention. Id. art. 15. Among other things, that provision states that a judge may give judgment, "even if no certificate of service or delivery has been received," if the document was transmitted pursuant to the Convention, a period of time not less than six months has elapsed,

and "no certificate of any kind has been received, even though every reasonable effort has been made to obtain it through the competent authorities." Id.

Plaintiff argues that Article 15 of the Hague Convention allows for default judgments in these circumstances. The Court Agrees.

Article 15 allows for entry of a default judgment, if three conditions are fulfilled: (1) "the document was transmitted by one of the methods provided for in this Convention"; (2) "a period of time of not less than six months, considered adequate by the judge in the particular case, has elapsed since the date of the transmission of the document"; and (3) "no certificate of any kind has been received, even though every reasonable effort has been made to obtain it through the competent authorities of the State addressed." Hague Convention art. 15. Here, all of these three mandatory conditions have been met, as (1) the Complaint was "transmitted" to the Chinese Central Authority on December 20, 2018; (2) to date, a period of over nineteen months has elapsed since the documents were transmitted; and (3) no certificate or response of any kind has been received, despite reasonable efforts, from the Chinese Central Authority. See McLean Decl. ¶¶ 5-13. See Burda Media, 417 F.3d at 302 ("On its face, Art. 15 applies only where 'no certificate of any kind has been received.'" quoting Hague Convention art. 15).

The Court notes, as discussed above, that following a request by the District Court to Plaintiff to provide particular caselaw that would be pertinent to this matter, the Court permitted Plaintiff to make the instant motion following actual notice to the Defendant via courier of the complaint as well as the Plaintiff's pre-motion conference letter. See Order dated August 14, 2019.

Regarding the first question posed by the District Court, Plaintiff did not find any cases, and to date no cases exist, in which a court expressly conditioned entry of default judgment

8

under Article 15 upon an international defendant receiving notice independently of the requirements of the Hague Convention. However, Plaintiff did present cases in which courts discussed whether actual notice was received by an international defendant in relation to a motion for entry of a default judgment under Article 15, despite the fact that Article 15 does not require such notice. See Burda Media, Inc., 417 F.3d at 302-03 (affirming refusal to vacate default judgment upon holding Article 15 service "inapplicable" but actual service and notice adequate); Gurung v. Malhotra, 279 F.R.D. 215, 218 (S.D.N.Y. 2011) (citing Burda Media and holding that actual notice to defendant satisfied Rule 4(f)); Daly v. Llanes, No. 98 Civ. 1196 (AGS), 1999 WL 1067876, at *1 & n.1 (S.D.N.Y. Nov. 24, 1999) (finding that plaintiff satisfied Article 15 and also that defendant had notice but declining to enter default judgment where defendant agreed to appear and defend case); China Int'l Marine Containers (Grp.) Ltd. v. Jiangxi Oxygen Plant Co., No. 4:15-CV-01887, 2017 WL 6403886, at *3 (S.D. Tex. Feb. 15, 2017) ("[T]he harshness of a default judgment is mitigated by the length of time that has passed since Plaintiff first filed its case and by Defendant's awareness of the suit."). As in the cases cited, although not required under Article 15, Plaintiff did provide Jinri with actual notice consistent with the District Court's August 14, 2019 Order. Prager Decl. ¶¶ 6-8.

With respect to the District Court's second question, Plaintiff cited six cases in which a court denied a motion for default judgment under Article 15 of the Hague Convention. However, all of the cited cases are factually distinguishable from the instant action. See Sikhs for Justice v. Nath, 893 F. Supp. 2d 598, 612-613 (S.D.N.Y. 2012) (court denied plaintiff's motion for entry of default judgment where defendant received actual notice of action and moved to dismiss for failure of service; plaintiff thereafter moved for entry of default under Article 15; and court granted defendant's motion to dismiss, all before considering and denying motion to rescind

9

dismissal/enter default); CGI Techs. & Sols. Inc. v. Acacio, No. SACV 17-1943 JVS (KESx), 2019 WL 978097, at *4 (C.D. Cal. Jan. 4, 2019) (declining to enter default judgment under Article 15 where domestic co-defendants alleged to be jointly and severally liable with defaulting foreign defendants); Celgene Corp. v. Distinct Pharma, No. 2:17-cv-5303-KM-JBC, 2018 WL 4251848, at *5 (D.N.J. Sept. 6, 2018) (holding without cited authority that default judgment could not be entered under Article 15 without evidence that the Central Authority of India attempted to serve defendant); Celgene Corp. v. Gupta, No. 2:17-cv-5308-KM-JBC, 2018 WL 4027032, at *4-6 (D.N.J. Aug. 23, 2018) (same); Brown v. Allen, No. 8:09-cv-1504-T-24 EAJ, 2010 WL 11507324, at *2 (M.D. Fla. Aug. 17, 2010) (holding without cited authority that default only available where defendant intentionally refuses to respond after proper service or where defendant intentionally conceals whereabouts to avoid service); Diz v. Hellmann Int'l Forwarders, Inc., 611 So. 2d 18 (Fla. App. 1992) (state court found requirements of Article 15 not met where Central Authority failed to serve defendant due to plaintiff providing wrong address and where defendant himself obtained official certificate of non-service from Central Authority in support of motion to vacate default). Unlike the cited cases, Plaintiff here properly served the Central Authority of China as set forth in Article 15 of the Hague Convention, and to date, has not received a response from the Central Authority of China.

In light of Plaintiff's proper service to the Central Authority of China pursuant to Article 15, which notice was never confirmed by that authority, and the actual notice provided to Jinri, this Court recommends that a default judgment may be entered under the Hague Convention.

II.   Legal Principles

    A.   Standards Applicable to Damages Award Following Default Judgment

Motions for default judgments are governed by Rule 55 of the Federal Rules of Civil

Procedure, which provides for a two-step process. See Fed. R. Civ. P. 55; Priestley v. Headminder, Inc., 647 F.3d 497, 504-05 (2d Cir. 2011). First, the moving party must obtain a certificate of default from the Clerk of Court. Fed. R. Civ. P. 55(a). Once the certificate is issued, the moving party may apply for entry of a judgment of default. Id. Rule 55(b).

In the context of a default, the well-pleaded factual allegations set forth in the complaint relating to liability are deemed true. See Greyhound Exhibitgroup, Inc. v. E.L. U.L. Realty Corp., 973 F.2d 155-58 (2d Cir. 1992). A plaintiff is not, however, entitled to a default judgment as a matter of right just because a party is in default. Rather, the court must determine whether the well-plead allegations establish liability as a matter of law. See City of New York v. Mickalia Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011). If liability is established, the court turns to ascertain damages "with reasonable certainty." Credit Lyonnais Sec., Inc. v. Alcanture, 183 F.3d 151, 155 (2d Cir. 1999). A hearing is not necessarily required and affidavits are sufficient as long as the Court can ensure that there is a basis for the damages sought by way of the proposed default judgment. See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997).

B.   Liability

Under the Patent Act, "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271. A properly registered patent is presumed to be valid. 35 U.S.C. § 282. Overcoming this presumption requires "clear and convincing evidence [of invalidity]." Spectrum Pharmaceuticals, Inc. v. Sandoz, Inc., 802 F.3d 1326, 1333 (Fed. Cir. 2015) (citing Microsoft Corp. v. i4i Ltd. P'ship., 564 U.S. 91 (2011)). In the event of infringement, "[a] patentee shall have remedy by

11

civil action for infringement of his patent." 35 U.S.C. § 281. Thus, to support a claim of direct infringement, a plaintiff need only show that a defendant made or marketed "a specific product that allegedly infringes [an identified] patent by virtue of certain specific characteristics." LaserDynamics USA, LLC v. Cinram Grp., Inc., No. 15 CV 1629, 2015 WL 6657258, at *4 (S.D.N.Y. Oct. 30, 2015). For an infringement to be found willful under the Patent Act:

> the accused infringer must have knowledge of [the patent]. Then, a patentee must show by clear and convincing evidence [1] that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent and [2] that this objectively-defined risk ... was either known or so obvious that it should have been known to the accused infringer.

Id. (quoting Investment Tech. Grp., Inc. v. Liquidnet Holdings, Inc., 759 F. Supp. 2d 387, 410 (S.D.N.Y. 2010), aff'd sub nom., Liquidnet Holdings, Inc. v. Pulse Trading, Inc., 478 F. App'x 671 (Fed. Cir. 2012)). The fact of a defendant's default is often treated as sufficient to establish that the infringement was willful. See, e.g., Telequip Corp. v. Change Exch., No. 01 CV 1748, 2004 WL 1739545, at *1 (N.D.N.Y. Aug. 3, 2004); Bic Corp. v. First Prominence Co., Ltd., No. 00 CV 7155, 2001 WL 1597983, at *4 (S.D.N.Y. Dec. 10, 2001).

Accepting all of the facts alleged in Plaintiff's Complaint as true, Kiss has established that Jinri willfully violated the '148 Patent. Kiss has submitted evidence that it validly held the patent during the course of Jinri's infringement. (See Compl. Exs. A, B, C,). Thus, the Court presumes the patent to be valid. As Jinri has not appeared to contest the validity of the '148 Patent, it has failed to overcome this presumption by clear and convincing evidence.

Kiss also adequately alleges that Jinri manufactured and marketed—and continues to manufacture and market— products which directly infringe on the protected claims of the patent.

12

See Compl. ¶¶ 40, 50. Kiss further alleges that after reasonable opportunity for further investigation or discovery, it is likely that the evidence will show that Jinri's acts of infringement have been made with full knowledge of the patent. Id. ¶¶ 20-21. Further, Kiss alleges that Jinri has engaged in willful and deliberate infringement of both patents. Id.

Given that Jinri has failed to appear in this action, the Court thus respectfully recommends that Jinri be held liable for direct infringement of the '148 Patent and that this infringement be found willful.

III.   Damages

Plaintiff has also requested a permanent injunction, barring Jinri from producing and selling the infringing tank. 35 U.S.C. § 283 provides that, "[t]he several courts having jurisdiction of cases under this title may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. Under "well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief." eBay Inc. v. MercExchange, LLC, 547 U.S. 388, 126 S. Ct. 1837, 1839, 164 L. Ed. 2d 641 (2006). To meet this burden:

> [a] plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

Id. (citations omitted). As the Court noted clear in eBay, "[t]hese familiar principles apply with equal force to disputes arising under the Patent Act." Id.

Moreover, "because the principal value of a patent is its statutory right to exclude," courts have concluded that monetary damages are an inadequate remedy against future

13

infringement. Honeywell Int'l Inc. v. Universal Avionics Sys. Corp., 397 F. Supp. 2d 537, 546 (D. Del. 2005) (quoting H.H. Robertson Co. v. United Steel Deck Inc., 820 F.2d 384, 390 (Fed. Cir. 1987) ); see Crescent Servs., Inc. v. Michigan Vacuum Trucks, Inc., 714 F. Supp. 2d 425, 431 (W.D.N.Y. 2010); Telequip Corp. v. The Change Exchange, No. 5:01-CV-1748 (FJS/GJD), 2006 WL 2385425, at *2 & n.2 (N.D.N.Y. Aug. 15, 2006) (holding "[t]his rule applies even in those situations in which the defendant's liability for patent infringement is established pursuant to a default judgment"). Finally, "public interest would not be disserved by the entry of a permanent injunction because without the right to obtain an injunction, the right to exclude granted to the patentee would have only a fraction of the value it was intended to have, and would no longer be as great an incentive to engage in the toils of scientific and technological research." Crescent, 714 F. Supp. 2d at 431(internal quotation marks and citation omitted).

Applying these principles to the uncontroverted allegations set forth in Plaintiff's complaint of patent infringement of the '148 Patent by Defendant, the court finds that Kiss has satisfied the four-factor test necessary to warrant entry of a permanent injunction in this case.

1. <u>Irreparable Injury</u>

In a patent infringement action, a showing of infringement of a valid patent creates a presumption of irreparable harm, because "the very nature of a patent provides the right to exclude." Pass & Seymour, Inc. v. Hubbell Inc., 532 F. Supp. 2d 418, 432 (N.D.N.Y. 2007) (quoting Pfizer, Inc. v. Teva Pharm., USA, Inc., 429 F.3d 1364, 1381 (Fed. Cir. 2005)). This presumption may be rebutted if the defendant can demonstrate "that future infringement is no longer likely, that the patentee is willing to forgo its right to exclude by licensing the patent, or that the patentee had delayed in bringing suit." Pfizer, Inc. v. Teva Pharm., USA, Inc., 429 F.3d at 1381 (Fed. Cir. 2005) (quoting Polymer Technologies, Inc. v. Bridwell, 103 F.3d 970,

975 (Fed. Cir. 1996)). The burden of rebutting this presumption rests with the alleged infringer. Id.

Having found Plaintiff's allegations sufficient to establish liability for patent infringement, the Court presumes that Kiss will suffer irreparable harm. As Jinri has not appeared to rebut this presumption, the Court finds that Plaintiff has established irreparable injury flowing from Defendant's continued infringement of its and patent.

2. <u>Inadequacy of Remedies at Law</u>

In the patent context, "monetary damages are not an adequate remedy against future infringement because the principal value of a patent is its statutory right to exclude." <u>Crescent Servs., Inc.</u>, 714 F. Supp. 2d at 431 (internal citations omitted). Thus, the likelihood of future infringement establishes the inadequacy of remedies at law. Id.

Here, Kiss alleges that Jinri has continued to infringe upon the patent after receiving actual notice and will continue to infringe upon the patent. In light of Defendant's default, the Court has been presented with no evidence in the record that the Defendant will cease its infringing activities simply because an award of damages is ordered. As such, the Plaintiff has established the inadequacy of remedies at law.

3. <u>Balance of Hardships</u>

Continued infringement of a party's intellectual property rights is the main factor courts consider when deciding whether the balance of hardships favors granting of an injunction. <u>Stark Carpet Corp. v. Stark Carpet & Flooring Installations, Corp.</u>, 954 F. Supp. 2d at 164. Where a defendant defaults in an intellectual property action, courts have recognized that "failure to ... participate in th[e] action, even after the entry of default, further demonstrates that [the defendant] is unlikely to cease its infringing activity." <u>Krevat v. Burgers to Go, Inc.</u>, 2014 WL

15

4638844, at *13 (E.D.N.Y. Sept. 16, 2014).

Kiss argues that if an injunction is not issued it would continue to be unfairly forced to compete against its own intellectual property. As Jinri has failed to appear to assert any hardships it would suffer should an injunction issue, the Court finds that the balance of hardships favors Kiss.

### 4. Public Interest

Courts have regularly found that there is a strong public policy interest in protecting intellectual property rights. See, e.g., Crescent Servs., Inc. v. Michigan Vacuum Trucks, Inc., 714 F. Supp. 2d at 431 (noting that strong intellectual property protections serve as "incentive to engage in the toils of scientific and technological research"); Stark Carpet Corp. v. Stark Carpet & Flooring Installations, Corp., 954 F. Supp. 2d at 164 (stating that "[a]nti-infringement injunctions serve the public interest by preventing consumer confusion and allowing a more efficient marketplace to operate by virtue of the availability to consumers of a clear identification of products, services and vendors"). Therefore, the Court finds that the public interest would be served by the entering of an injunction.

Accordingly, this Court recommends that Jinri be permanently enjoined from infringing on the '148 Patent held by Kiss.

## CONCLUSION

For the foregoing reasons the Court respectfully recommends that Plaintiff's motion for a default judgment, appearing as Docket Entry No. 19 herein, be granted. It is further recommended that a permanent injunction issue barring Jinri from infringing on Kiss' protected patent.

## OBJECTIONS

A copy of this Report and Recommendation is being provided to Plaintiff's counsel via ECF. Furthermore, the Court directs Plaintiff's counsel to (1) to serve a copy of this Report and Recommendation to Defendant via courier, and (2) to file proof of service on ECF by July 30, 2020. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this report. 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or Court of Appeals. Thomas v. Arn, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision.").

Central Islip, New York
July 23, 2020

                                                           /s/ Anne Y. Shields
                                                         Anne Y. Shields
                                                         United States Magistrate Judge